IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| TOMMY WILLIS #794591 | § | |
| v. | § | CIVIL ACTION NO. 9:10cv108 |
| CAPTAIN LACOX, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

    The Plaintiff Tommy Willis, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). He names a number of defendants in his lawsuit, including Captain Lacox, former TDCJ-CID Director Nathaniel Quarterman, Warden Hirsh, psychologist Julia Roy, a grievance investigator named Griffin, an officer named Worthy, an officer named Duff, Sgt. Valentine, Officer Nickerson, Officer Chavous, Officer Hill, Sgt. Gerrald, Sgt. Hinesman, Lt. Luna, Captain Hutto, Sgt. Neil, and Lt. Duff, not the same individual as the Officer Duff previously named.

    At an evidentiary hearing and in his amended complaint, Willis says that on December 11, 2008, Luna, Hinesman, Gerrald, and Hill came to his cell to conduct a search. Willis and his cellmate were taken to different locations to wait until the search was over. While they were on their way back to the cell, Hill stopped them and said that Luna and Gerrald wanted to search the cell again. During this second search, it was alleged that contraband, in the form of a cell phone card, was found in Willis' property. Willis denied having any knowledge of the cell phone card and asserts that it was "planted" in his property, if in fact it was actually found there at all. He asked for a polygraph test to prove his innocence, but it was denied.

    Shortly thereafter, Willis says, he received a false disciplinary case. In his amended complaint, Willis says that prior to the finding of the alleged contraband, an officer named Neil had

wrongly labeled him as a gang member and attempted to get information from him about gang activities. Willis told Neil that he was not a gang member and had no such information, and officers began harassing him. The finding of the contraband then occurred.

At the evidentiary hearing, by contrast, Willis testified that his common-law wife had an uncle who worked at the Polunsky Unit and he had a friend on his visitation list who had an aunt who worked there, and the prison officials were trying to gain information about the uncle and the aunt, as part of an investigation into cell phones at the unit. Willis did not mention being falsely labeled as a gang member at the evidentiary hearing.

Willis states that because of the harassment, he told a nurse that he was going to harm himself. The mental health department was contacted and they ordered that Willis be placed in an observation cell until he could be sent to the Skyview psychiatric unit. On December 12, 2008, Sgt. Valentine and officers Nickerson and Chavous came to take Willis to the observation cell. While he was being handcuffed, another inmate was able to get his cell door open and rushed out to attack Willis, stabbing him twice.

Willis was then taken to the infirmary, where he received treatment for his injuries. Captain Lacox and Lt. Duff came and took pictures of his injuries. He told them that he wanted to file a life endangerment complaint, but they did not do so.

Willis was then taken to the observation cell, where he stayed for four days until being sent to the Skyview Unit. The officers there did file a life endangerment complaint, but the warden at the Skyview Unit thought that it would be best to allow the officials at the Polunsky Unit handle the matter because the incident had happened there. Willis was discharged from the Skyview Unit on December 23 and returned to the Polunsky Unit.

When he arrived back at the Polunsky Unit, he went before the Unit Classification Committee, before Officer Duff, Captain Hutto, and grievance investigator Worthy. He told them that he wanted to file a life endangerment complaint, but they refused. Instead, they returned him to his cell, where his cellmate assaulted him that night while he was asleep. He acknowledged that

he had never had problems with his cellmate before then, but insists that this assault could have been prevented had the officers on the committee acted on his request to file a life endangerment complaint on his behalf.

Willis testified that he sued Captain Lacox because Lacox would not file a life endangerment complaint for him. He said that Warden Hirsh and Nathaniel Quarterman had a duty to assure the safety of the inmates, since they were in charge of the unit and the prison system respectively.

Willis stated that Worthy, the grievance investigator, was on the unit classification committee with Officer Duff and Captain Hutto. He complained that these officers also would not file a life endangerment complaint and indicated that had they done so, he would not have been assaulted by his cellmate that night; however, he acknowledged that he had never had any problems with his cellmate in the past.

Next, Willis stated that he sued Valentine, Chavous, and Nickerson because they were the escorting officers when he got attacked. He conceded that he "could not say" that the officers knew that he was going to be assaulted, and said that the weapon used by the assailant was a hand-made shank. He indicated that the officers owed him a duty to keep him safe, but was unable to say what they could have done differently.

Willis states that he sued Gerrald, Hinesman, Hill, and Luna because they "must have planted" the contraband which was found in his cell. He speculated that they had done so in order to get information, either because he was a suspected gang member, as he said in his complaint, or because he was believed to have ties to people who were related to officers at the unit, as he testified at the evidentiary hearing. Willis said that it was "very doubtful" that another inmate could have planted the contraband, because only he and his cellmate had access to the cell and he did not believe that his cellmate would have done it, although this appears to be the same cellmate who assaulted him upon his return to the Polunsky Unit. Willis notes that he received a "false disciplinary case" for the contraband.

Finally, Willis names in his amended complaint a sergeant named Neil, whom he says "mislabeled him as a gang member when in fact he knew Plaintiff wasn't." He says that Neil had "no proof whatsoever" to substantiate this claim. Willis says that he contacted his family, who contacted state government officials complaining of the way that he, Willis, was being mistreated, and so Neil "worked with a number of others to harass and retaliate against Plaintiff." He says that Neil placed him in the position where he could be assaulted, but offers no facts as to how this was done.

The Prison Records

Willis' classification records make a brief reference to an OPI (offender protection investigation) on December 19, 2008. The TDCJ records show that on December 16, 2008, an Offender Protection Investigation was initiated because Willis made a statement concerning the assault by Shepherd. Willis was at the Skyview Unit at that time. The investigation substantiated the allegation that he had been assaulted by Shepherd and recommended review for further investigation upon Willis' return to the Polunsky Unit.

Willis' medical records show that he had two superficial lacerations, on his arm and back, presumably as a result of the assault. The next day, he told nursing staff that he had swallowed a razor blade. He was sent to Skyview, where his wounds were treated and dressed. He left the Skyview Unit on December 22, 2008.

On December 24, 2008, Willis was again seen in the clinic after chemical agents were used to break up the fight which he had with his cellmate. He denied any injuries or respiratory difficulties. Willis received a disciplinary case surrounding this incident, and the cellmate admitted to choking Willis while Willis was asleep. Willis was found guilty of fighting without a weapon, but based on the cellmate's testimony, he received as punishment only a verbal reprimand. His grievance records show that he did not file any timely grievances concerning any of the incidents of which he complains; while he did file a grievance about the disciplinary case for contraband, this

grievance was filed over a year after the case was written, and so the grievance was screened (i.e. returned unprocessed) as untimely.

## Legal Standards and Analysis

The TDCJ records show that Willis has not exhausted his administrative remedies in a proper manner, because the only grievance he filed pertaining to the claims in this lawsuit was filed over a year late, and thus was rejected as untimely. The Supreme Court has held that exhaustion of administrative remedies requires compliance with all procedures and deadlines of the grievance process. Woodford v. Ngo, 126 S.Ct. 2378, 2388 (2006); *accord*, Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004). Because Willis failed to do so, his lawsuit is amenable to dismissal with prejudice for failure to exhaust administrative remedies.

However, it is also apparent that his claims lack merit on their face. The first claim that he raises concerns the search of his cell, in which he says that contraband was "planted" in his property by the officers. Willis concedes that he received disciplinary action for possession of contraband as a result of this search, referring to the disciplinary case as "false."

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that where success in a prisoner's Section 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first obtain favorable termination of his available state or federal habeas opportunities to challenge the underlying conviction or sentence. This rule was applied to the forfeiture of good time in prison disciplinary proceedings in Edwards v. Balisok, 520 U.S. 641, 648-49 (1997). The disciplinary records show that Willis lost 89 days of good time as a result of the possession of contraband case; thus, in order to pursue a civil action which necessarily implicates the validity of this disciplinary case, he must show that the case has been expunged, overturned, set aside, or otherwise declared invalid. *See also* Clarke v. Stalder, 154 F.3d 190 (5th Cir. 1998).

In this case, if Willis proved that the contraband was planted in his cell by the officers and that he never possessed a cell phone card, this would necessarily implicate the validity of the

disciplinary case which he received for possession of contraband. In <u>Hudson v. Hughes</u>, 98 F.3d 868. 872 (5th Cir. 1996), the Fifth Circuit stated that "the maturity of a Section 1983 claim therefore depends on 'whether a judgment in [the plaintiff's] favor ... would necessarily imply the invalidity of his conviction,'" *citing* <u>Heck</u>, 114 S.Ct. at 2372. Because Willis' claim that the contraband was planted in his cell implies the invalidity of the disciplinary case he received for possessing that contraband, he cannot proceed on this claim without showing that the case has been expunged, overturned, set aside, or otherwise declared invalid. Willis has made no such showing and so his claim on this point is without merit.

    Furthermore, Willis presented nothing more than speculation that the contraband had in fact been planted in his cell by the officers. When asked at the evidentiary hearing if another inmate could have planted it, he said only that this was "very doubtful" and that he "did not believe" that his cellmate would have done it. Such speculation is insufficient to support a constitutional claim. Willis' claims against the search team, Gerrald, Hinesman, Hill, and Luna, are without merit.

    Next, Willis complains that Valentine, Nickerson, and Chavous were deliberately indifferent to his safety and did not take adequate steps to protect him from assault. He states that he was in the process of being handcuffed for escort to the observation cell when another inmate, Shepherd, rushed out of his cell and stabbed him twice with a shank. At the hearing, Willis acknowledged that he "could not say" that the officers knew that he was going to be assaulted.

    The Fifth Circuit has held that no rule of constitutional law requires unarmed officials to endanger their own safety to protect a prison inmate threatened with physical violence. <u>Longoria v. Texas</u>, 473 F.3d 586, 594 (5th Cir. 2006). In this case, Willis states that Shepherd had a shank, and so the officers did not have a constitutional duty to endanger themselves or expose themselves to being stabbed in an effort to protect Willis. Furthermore, Willis' testimony shows that the incident happened very quickly; he states that Shepherd rushed out of his cell, stabbed him twice, and then retreated. Willis was promptly escorted to the infirmary for treatment, and he says that other officers secured possession of the weapon and turned it over to the Office of the Inspector General. Willis

has failed to show that the Defendants were deliberately indifferent to his safety by failing to protect him from this assault.

Willis also argues that Valentine, Nickerson, and Chavous were deliberately indifferent to his safety by failing to check all of the other doors in the area to ensure that they were locked before handcuffing Willis. The Supreme Court has specifically addressed the issue of deliberate indifference to an inmate's safety in prison. The Court explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); see Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

The failure to check all of the doors in the area prior to handcuffing Willis is not tantamount to knowing of and disregarding an excessive risk to inmate health or safety. At most, it might be considered a failure to alleviate a risk which should have been perceived but was not. Even if the officers were negligent in this failure, this negligence does not rise to the level of a constitutional violation. See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986). This claim is without merit.

Willis also complains that Captain Lacox would not assist him in filing a life endangerment complaint. However, Lacox had no duty under the United States Constitutional to do so. Willis could initiate such a complaint through a grievance or through an I-60 inmate request form without the assistance of an officer, and acknowledges that he was able to do so at the Skyview Unit. He does not contend that Lacox prevented him from filing such a complaint, but simply that Lacox would not file one on his behalf or assist him in filing one. Even if Lacox's actions somehow violated TDCJ rules and regulations, Willis has failed to show a violation of the Constitution or laws of the United States. See Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (violation of prison

rules alone is not sufficient to rise to the standards of a constitutional claim); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986) (same). His claim on this point is without merit.

Similarly, Willis complains that Officer Duff, Officer Worthy, and Captain Hutto would not file a life endangerment complaint on his behalf when he went before the Unit Classification Committee upon his return to the Polunsky Unit. Willis could have filed a life endangerment complaint through a grievance or an I-60 inmate request form, and did not require the assistance of the committee members to do so; the fact that they did not accede to his request for assistance in filing a life endangerment complaint does not show a violation of the Constitution or laws of the United States.

Willis contends that had a proper life endangerment or offender protection investigation been done, he would not have been assaulted by his cellmate. However, he concedes that he had never had any previous problems with his cellmate. Under these circumstances, even had an investigation been done, the officers could not have learned that Willis was in danger from his cellmate, because such danger was not known until the assault actually took place.

Thus, Willis has not shown that he suffered any harm from the failure by the members of the Unit Classification Committee to file a life endangerment complaint on his behalf, nor that the harm which he actually suffered was reasonably foreseeable. He does not allege that he told the members of the Unit Classification Committee that he was in danger from his cellmate, which is understandable given that Willis acknowledges that he had never had any problems from his cellmate in the past. Because a danger from Willis' cellmate was not reasonably foreseeable, the members of the Unit Classification could not have been deliberately indifferent because they were not aware of facts from which the inference could be drawn that a serious risk of harm to Willis existed from his cellmate, nor that they drew such an inference. Willis' claims against Officer Duff, Officer Worthy, and Captain Hutto are without merit.

Next, Willis sues psychologist Julia Roy, saying that shortly after he was assaulted by Shepherd, he was able to talk to Roy, and she told him that she knew prior to the assault that

Shepherd had a weapon in his cell, but she could not recall who she told about it. Willis says that Roy was "grossly negligent" for failing to contact the proper security staff and that he had to suffer pain as a result of this negligence.

Willis does not assert that Roy told no one about the weapon, but simply that she told him that she could not remember who she had told about it; he speculates that Roy must not have told the appropriate security officers, and therefore was negligent. This speculation is insufficient to show that Roy knew of and disregarded an excessive risk to Willis' health or safety; even if Roy was negligent, as Willis postulates, this does not set out a constitutional claim. Davidson, 474 U.S. at 347-48. In addition, the Fifth Circuit has held that speculation alone will not support a constitutional claim. Parker v. Currie, 359 Fed.Appx. 488, 2010 WL 10924 (5th Cir., January 4, 2010) (speculation that attacks by other inmates were orchestrated by prison officials was a "fanciful characterization" which "calls for dismissal"); *see also* Spellmon v. Price, 100 F.3d 953, 1996 WL 625422 (5th Cir., October 10, 1996) (rejecting speculative claim of retaliation) *and* Collins v. Tarrant, 132 F.3d 1454, 1997 WL 802094 (5th Cir., November 14, 1997) (same). Similarly, Willis' speculation that Roy must not have told the right people, although she told him that she could not remember who she told, does not show the violation of a constitutional right. His claim against Roy is without merit.

Willis complains that Sgt. Neil falsely labeled him as a gang member when he is not one. In Gonzalez v. Patzke, slip op. no. 4:06cv1889, 2006 WL 1662928 (S.D.Tex., June 9, 2006, no appeal taken), the plaintiff complained that his rights were violated because he was falsely labeled as a gang member. The U.S. District Court for the Southern District of Texas held that prison officials have broad discretion in classifying their prisoners and that Gonzalez did not have a constitutional right not to be classified as a security threat. The lawsuit was thus dismissed with prejudice as frivolous. *See* Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992) (inmates do not have a protected liberty interest in their custodial classification). Similarly, the fact that Willis has

been designated as a gang member when he says that he is not a member does not show any violation of the Constitution or laws of the United States.

Willis also raises a rudimentary retaliation claim against Sgt. Neil, as follows:

> Once Plaintiff contacted his family, and they in turn contacted outside State Government officials complaining of the Plaintiff being mistreated and falsely accused of being a gang member, this defendant worked with a number of others to harass and retaliate against Plaintiff. Thereafter placing Plaintiff in the position where he could be assaulted and attacked twice. Which caused Plaintiff rights to be violated under the 1st, 8th, and 14th Amendment to the U.S. Constitution.

Willis did not mention a retaliation claim at the evidentiary hearing nor provide any specific facts in support of this claim.

The Fifth Circuit has stated that a prisoner who asserts a retaliation claim must assert specific facts; mere conclusory allegations are not enough. Whittington v. Lynaugh, 842 F.2d 818, 820 (5th Cir. 1988); Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988). The elements of a claim under a theory of retaliation are the invocation of a specific constitutional right, the defendant's intent to retaliate against the plaintiff for his exercise of that right, a retaliatory adverse act, and causation, which is a showing that but for the retaliatory motive, the action complained of would not have occurred. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. Johnson, 110 F.3d at 310, *citing* Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).

In this case, Willis has offered no specific facts whatsoever to show that he was the victim of retaliation, but simply a vague and nebulous assertion that Sgt. Neil retaliated against him. He has not shown any specific retaliatory act nor that but for the alleged retaliatory motive, any action complained of would not have occurred, nor has he shown anything more than a personal belief that he was the victim of retaliation. Willis' claim of retaliation against Sgt. Neil is without merit.

10

Finally, Willis sued two supervisory officials, Warden Hirsh and Nathaniel Quarterman. He testified that Hirsh and Quarterman had a duty, because of their positions of authority, to assure the safety of their inmates, but that they failed to carry out this duty. The Fifth Circuit has stated that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, Willis has not shown that Hirsh or Quarterman were personally involved in a constitutional deprivation, that wrongful conduct by either Hirsh or Quarterman was causally connected to a constitutional deprivation, or that they implemented a constitutionally deficient policy which was the moving force behind a constitutional deprivation. In fact, Willis has not shown a constitutional deprivation at all. The Fifth Circuit has held that absent primary liability, there can be no supervisory liability. Gibbs v. King, 779 F.2d 1040, 1046 n.6 (5th Cir.), *cert. denied* 476 U.S. 1117 (1986). These claims are without merit.

Willis also mentions Hirsh and Quarterman with reference to a claim that his rights under the Americans with Disabilities Act and the Rehabilitation Act were violated. He describes himself as a "handicapped disabled inmate due to his vision." However, he offers no facts to support his claims of violations of the ADA or the RA. In his discussions of Quarterman and Hirsh, Willis says only that the Director and the Warden failed to make sure that he and other handicapped inmates were housed separately from inmates "known to be violent and aggressive" and that the failure to provide unspecified "adequate living accommodations" was a violation of the ADA and the RA.

The courts have held that plaintiffs may not bring actions under 42 U.S.C. §1983, the Civil Rights Act, to vindicate rights created by Title II of the Americans with Disabilities Act or Section

504 of the Rehabilitation Act. Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002), *cert. denied,* 537 U.S. 1104 (2003). Furthermore, the Fifth Circuit has held that there is no individual liability in lawsuits under the Rehabilitation Act, and that individual liability for claims of violations of the Act cannot be secured by casting the lawsuit under Section 1983 rather than under the Act. Lollar v. Baker, 196 F.3d 603, 608-09 (5th Cir. 1999). Because the remedies, procedures, and rights under the Americans with Disabilities Act are the same as those under the Rehabilitation Act, there is likewise no individual liability for claims of violations under the ADA. Decker v. Dunbar, 633 F.Supp.2d 317, 357 (E.D.Tex. 2008), *aff'd* 358 Fed.Appx. 509, 2009 WL 5095139 (5th Cir., December 21, 2009), *cert. denied*, 131 S.Ct. 96 (2010); Washburn v. Texas, slip op. no. A-07-CA-116, 2008 WL 170033 (W.D.Tex., January 16, 2008), *citing* Kacher v. Houston Community College System, 974 F.Supp. 615, 619 (S.D.Tex. 1997); *see also* Hay v. Thaler, civil action no. 4:09cv4075, 2011 WL 1237940 (S.D.Tex., March 7, 2011) (noting that "although the Fifth Circuit has not expressly addressed the question of individual liability under Title II of the ADA, it has recognized that a plaintiff cannot sue an individual under the Rehabilitation Act, 29 U.S.C. §794(a), which provides a comprehensive remedial framework and enforcement provisions similar to the ADA," *citing* Lollar, 196 F.3d at 609). Because there is no individual liability under the ADA or the RA, Willis' claims against the individuals Nathaniel Quarterman and Warden Hirsh are without merit.

Even were this not the case, Willis could not prevail on his ADA claim. The pertinent portion of the Americans with Disabilities Act, 42 U.S.C. §12132, reads as follows:

> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity.

The Act specifically provides that the remedies, procedures, and rights set forth in Section 505 of the Rehabilitation Act of 1973, 29 U.S.C. §794a, shall be the remedies, procedures, and rights this title provides to any person alleging discrimination on the basis of disability in violation of Section 12132. *See* 42 U.S.C. §12133.

To make out a *prima facie* case under the ADA, the plaintiff must establish: (1) that he is a qualified individual with disabilities; (2) that he was discriminated against by a public entity; and (3) that the discrimination occurred because of his disability. Judice v. Hospital Service District No. 1, 919 F.Supp. 978, 981 (E.D.La. 1996); *see* Blanks v. Southwestern Bell Communications, 310 F.3d 398, 400 (5th Cir. 2002).

In this case, even given the assumption that Willis is "a qualified individual with a disability" because of his unspecified vision problem, he has failed to show that he was discriminated against *because of* this disability. *See, e.g.*, Davidson v. Texas Department of Criminal Justice, 91 Fed.Appx. 963 (5th Cir., March 19, 2004) (not selected for publication in the Federal Reporter) (affirming dismissal of ADA lawsuit where plaintiff failed to show that he was adversely treated because of his handicap); Shaw v. Texas Department of Criminal Justice, 46 Fed.Appx. 225 (5th Cir., July 17, 2002) (not selected for publication in the Federal Reporter) (inmate denied participation in program for handicapped prisoners because of a notation in his record labeling him a member of a militant organization failed to show an ADA violation because the adverse treatment was not due to his disability). Willis offers nothing to show, nor does he even allege, that he was adversely treated *because of* any disability which he may have had. His claim under the Americans with Disabilities Act and the Rehabilitation Act is without merit and must be dismissed.

Willis makes a brief reference to the Texas Tort Claims Act, although he offers no facts to show how any of his allegations meet the requirements of that statute. Furthermore, any claims which he may raise under the Texas Tort Claims Act are creations of state law, not federal law. The Fifth Circuit has held that to obtain relief under the Civil Rights Act, 42 U.S.C. §1983, a person must show two elements. These are: (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was done by a person acting under color of state law. Johnson v. Dallas Independent School District, 38 F.3d 198, 199 (5th Cir. 1994). The Texas Tort Claims Act does not create rights secured by the Constitution or laws of the United States.

Alternatively, Willis may be seeking to invoke the supplemental jurisdiction of the Court with his allusion to the Texas Tort Claims Act, the claim is without merit. The doctrine of supplemental jurisdiction is codified in 28 U.S.C. §1367, for all civil actions filed on or after December 1, 1990. See Public Law 101-650, Section 310(c); Whalen v. Carter, 954 F.2d 1087, 1097 n.10 (5th Cir. 1992).

28 U.S.C. §1367(a) reads as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Subsection (b) refers to actions filed under diversity jurisdiction and thus is not applicable in this case. Subsection (c) reads as follows:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> (1) The claim raises a novel or complex issue of State law;
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
>
> (4) in exceptional circumstances, there are compelling reasons for declining jurisdiction.

Here, the Court acquired original jurisdiction based on Willis's claim of violations of federal law under the Constitution as well as the ADA and the RA. See Baker v. McCollan, 443 U.S. 137 (1979). However, he failed to show a violation of the Constitution or laws of the United States. Thus, the claims over which this Court possessed original jurisdiction are without merit.

The Court therefore declines supplemental jurisdiction over Willis' state law claims, deferring instead to the laws and judicial processes of the State of Texas. 28 U.S.C. §1367(c)(3);

Slaughter v. Allstate Insurance Co., 803 F.2d 857 (5th Cir. 1986) (supplemental jurisdiction should not ordinarily be exercised where there is no federal claim). Because the Court declines supplemental jurisdiction over the state law claims, the statute of limitations on such claims should be tolled from the date the lawsuit was originally filed until thirty days after the final judgment dismissing the action is entered on the docket. 28 U.S.C. §1367(d). Willis' invocation of the supplemental jurisdiction of the Court is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Willis' complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted in federal court. Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED as frivolous with prejudice as to its refiling in federal court, but without prejudice as to any state-law claims which Willis may raise in the courts of the State of Texas. 28 U.S.C. §1915A. It is further

ORDERED that the statute of limitations on any such state-law claims is hereby tolled from the date the lawsuit was originally filed until thirty days after the final judgment dismissing the action is entered on the docket. 28 U.S.C. §1367(d). It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED. Finally, it is

ORDERED that the Clerk shall send a copy of this opinion to the Administrator of the Strikes list for the Eastern District of Texas.

So **ORDERED** and **SIGNED** this **10** day of **February, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE